**Case Nos. 3:24-cv-08550, 3:24-cv-08555**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

IN RE INVITAE CORPORATION, ET AL.,
DEBTORS.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
APPELLANT,
V.
INVITAE CORPORATION, ET AL.,
APPELLEES.

APPEAL FROM THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF NEW JERSEY
BANKR. CASE NO. 24-11362 (MBK)

## RESPONSE OF U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, AS TRUSTEE AND COLLATERAL AGENT, AND JOINDER TO RESPONSE BRIEF OF DEERFIELD PARTNERS, L.P. AND TO CONSOLIDATED OPENING BRIEF OF INVITAE CORPORATION

Dated: November 15, 2024

**RIKER DANZIG LLP**
Joseph L. Schwartz, Esq.
Tara J. Schellhorn, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
jschwartz@riker.com
tschellhorn@riker.com

**SHIPMAN & GOODWIN LLP**
Kathleen M. LaManna, Esq.*
Kimberly S. Cohen, Esq.*
Anthony R. Scarcella, Esq.*
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (860) 251-5603
Facsimile: (860) 251-5218
klamanna@goodwin.com
kcohen@goodwin.com
ascarcella@goodwin.com

*Co-Counsel to U.S. Bank Trust Company, National Association as Trustee and Collateral Agent for the 4.5% Series A and 4.5% Series B Convertible Senior Secured Notes due 2028*

**Pro Hac Vice* Pending

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure Rule 8012 and Federal Rule of Civil Procedure 7.1, counsel for U.S. Bank Trust Company, National Association, as Trustee and Collateral Agent for the 4.5% Series A and Series B Convertible Senior Secured Notes due 2028 certifies that U.S. Bank Trust Company, National Association is a wholly-owned subsidiary of U.S. Bank National Association, which is a wholly owned subsidiary of U.S. Bancorp, a publicly traded corporation that does not have any parent corporation and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page(s)**

**JOINDER**..................................................................................................................1

**COMPLIANCE WITH FED. R. BANKR. P. 8014** ...............................................1

**ADDITIONAL RELEVANT BACKGROUND** ....................................................2

**STANDARD OF REVIEW** ..................................................................................6

**ARGUMENT POINT 1: THE APPEAL IS EQUITABLY MOOT**....................7

    I.    **Finality of Bankruptcy Plans and Equitable Mootness Standard** ............7

    II.   **The Plan Has Been Substantially Consummated** ....................................13

    III. **Appellant Seeks to Unwind the Substantially Consummated Plan** ........14

    IV. **22% of the Noteholders are Unknown and Would Be Substantially Harmed if the Plan Were Unwound** ..........................................................18

**ARGUMENT POINT 2: EVEN IF THIS COURT DOES NOT FIND THAT THE APPEAL IS EQUITABLY MOOT, THIS COURT SHOULD NOT REVERSE THE STANDING MOTION OR OVERTURN THE BANKRUPTCY COURT'S RULING WITH RESPECT TO RELEASES** ....................................................................20

    I.    **Appellant Has Not Met Its Burden to Warrant Derivative Standing** ....20

    II.   **No Colorable Claims Have Been Asserted Against the Trustee** .............22

    III. **The Bankruptcy Court Also Did Not Err in Confirming the Plan Releases** ...................................................................................................23

**CONCLUSION**..................................................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re Penn Cent. Transp. Co.*,
771 F.2d 762 (3d Cir. 1985) ......................................................................11

*In re Contin*
91 F.3d 553 (3d Cir. 1996) .......................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................20

*Corbett v. MacDonald Moving Servs.*,
  124 F.3d 82 (2d Cir. 1997) .....................................................................10

*Cybergenics Corp. v. Chinery*,
  330 F.3d 548 (3d Cir. 2003) ...............................................................6, 20

*Duryee v. Erie R. Co.*,
  175 F.2d 58 (6th Cir. 1949) ....................................................................11

*Freedom Mortg. Corp. v. Smith,*
  No. 21CV11025 (EP), 2022 WL 17093102 (D.N.J. Nov. 21, 2022) ..................10

*In re Antiquities of Nev.*, *Inc.,*
  173 B.R. 926 (9th Cir. BAP 1994) ........................................................11

*In re Archway Homes*, *Inc.,*
  No. 12-02226-8-SWH, 2013 WL 5835714 (Bankr. E.D.N.C. Oct. 30, 2013) ....11

*In re Boy Scouts of Am. & Delaware BSA*, *LLC,*
  650 B.R. 87 (D. Del. 2023) .................................................................6, 7

*In re Celsius Network LLC*,
  656 B.R. 327 (Bankr. S.D.N.Y. 2023) ....................................................9

*In re Centaur, LLC,*
  No. 10-10799 (KJC), 2010 WL 4624910 (Bankr. D. Del. Nov. 5, 2010) ..........20

*In re Charterhouse, Inc.,*
  84 B.R. 147 (Bankr. D. Minn. 1988) ...........................................................11, 12

*In re Dura Automotive Sys. Inc.,*
  403 B.R. 300 (D. Del. 2009) ............................................................................12

*In re Exide Holdings, Inc.,*
  No. 20-11157-CSS, 2021 WL 3145612 (D. Del. July 26, 2021) ..................14, 19

*In re George Washington Bridge Bus Station Dev. Venture LLC*
  2021 U.S. Dist. LEXIS 28601 (S.D.N.Y. 2021) ..................................................6

*In re Hudson's Coffee, Inc.,*
  No. CIV.A.08CV5133DMC, 2009 WL 1795833 (D.N.J. June 22, 2009) ........6, 7

*In re Optim Energy, LLC*
  No. 14-10262-BLS, 2014 WL 1924908 (Bankr. D. Del. May 13, 2014) ............20

*In re Racing Servs., Inc.,*
  540 F.3d 892 (8th Cir. 2008) ....................................................................6, 20, 21

*In re SemCrude L.P.,*
  728 F.3d 314 (3d Cir. 2013) .........................................................................11, 12

*In re Szostek,*
  886 F.2d 1405 (3d Cir. 1989) ...........................................................................10

*In re Tribune Media Co.,*
  799 F.3d 272 (3d. Cir. 2015) ............................................................................12

*In re U.S. Repeating Arms Co.,*
  98 B.R. 138 (Bankr. D. Conn. 1989) ................................................................11

*In re Yes! Entm't Corp.,*
  316 B.R. 141 (D. Del. 2004) .............................................................................20

*Manges v. Seattle-First Nat'l Bank,*
  29 F.3d 1034 (5th Cir. 1994) ............................................................................12

*In re Nutraquest, Inc.,*
  434 F.3d 639 (3d Cir. 2006) ...............................................................................7

*Ostreicher v. Lincoln Nat'l Life Ins. Co.*,
  2019 WL 7194478 (E.D.N.Y. Dec. 26, 2019) ....................................................10

*Philips v. County of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) .............................................................................21

## Statutes

11 U.S.C § 1141 ..................................................................................................9

11 U.S.C. § 1101 ...............................................................................................13

11 U.S.C. § 1127 .......................................................................................9, 11, 12

11 U.S.C. § 1102 ..................................................................................................4

11 U.S.C. § 1144 ..................................................................................................9

## Rules

Fed. R. Bankr. P. 8014 ......................................................................................1, 2

Fed. R. Civ. P. 7.1 ............................................................................................. ii

Fed. R. Bankr. P. 8012 ........................................................................................ ii

U.S. Bank Trust Company, National Association ("U.S. Bank") serves as trustee (the "Indenture Trustee") and collateral agent (in such capacity, the "Collateral Agent" and, collectively with the Indenture Trustee, the "Trustee") under that certain Indenture dated as of March 7, 2023 (the "Indenture"), pursuant to which the 4.5% Series A and 4.5% Series B Convertible Senior Secured Notes due 2028 (the "Secured Notes") were issued by Invitae Corporation (the "Bankruptcy Debtor" and together with the Bankruptcy Debtor's debtor affiliates, the "Bankruptcy Debtors" or the "Debtors") and has been named as a party to the Committee's appeal (the "Appeal"). The Trustee hereby joins in the *Response of Deerfield Partners, L.P.* (the "Deerfield Brief") and the *Consolidated Opening Brief of Invitae Corporation* (the "Reorganized Debtors Brief" and together with the Deerfield Brief, the "Responding Briefs"), and, in response to the Appellant's opening brief (the "Opening Brief"), the Trustee further states as follows:

## JOINDER

Under Rule 8014(e) of the Federal Rules of Bankruptcy Procedure (the "Federal Rules"), the Trustee hereby joins in the Responding Briefs, insofar as they address matters impacting the Secured Notes or the Trustee.

## COMPLIANCE WITH FED. R. BANKR. P. 8014

To avoid duplication and in accordance with Federal Rule 8014(e), unless otherwise expressly noted herein, the Trustee hereby joins in and adopts by reference

1

those sections of the Deerfield Brief required by Federal Rule 8014(b), including the Statement of the Issues Presented, Statement of the Case, and Summary of the Argument.

**ADDITIONAL RELEVANT BACKGROUND**[1]

U.S. Bank serves in its capacity as Trustee, on behalf of itself and all holders of the Secured Notes (collectively, the "<u>Noteholders</u>", and each a "<u>Noteholder</u>") pursuant to the Indenture. The Secured Notes were issued pursuant to the Indenture, and the security interest granted pursuant to the Indenture and related documents is for the benefit of the Trustee and the Noteholders (the "<u>Secured Parties</u>"). The Trustee was appointed at the time the Secured Notes were issued and its roles are established in, and defined by, the documents governing the Secured Notes, including the Indenture. (*See generally* Indenture; DE 1029 ¶ 101).[2] The Trustee is not an investor or financial stakeholder with respect to the Secured Notes, except with respect to its right to be paid for its services rendered as Trustee and its right to indemnification under the Indenture. The Trustee filed proofs of claim in the

---

[1] Pursuant to Federal Rule 8014(e), the Trustee adopts by reference and respectfully directs the Court to the Responding Briefs for detailed background information. To avoid duplication, the Trustee only includes here the most relevant background information on both the Trustee's role and the bankruptcy process. To the extent of any inconsistencies in the relevant background among the Responding Briefs and the Trustee's brief, the Trustee's brief shall control.

[2] This brief cites to Appellees' Joint Counter Designation of the Record using the following abbreviations: Debtors' Exhibits (DX) and the Hearing Transcript (HT). References to "DE" refer to the docket in bankruptcy case no. 24-11362.

2

bankruptcy on behalf of all Secured Parties with respect to all obligations owed by the Debtors pursuant to the Indenture and related documents (collectively, the "Claim").  (DE 720 ¶ 4).

The Secured Notes are held in book-entry form by The Depository Trust Company ("DTC"), which means that DTC is the sole registered owner of all of the Secured Notes and acts as a nominee holder on behalf of beneficial holders of the Secured Notes.  In some cases, Secured Notes may be held by custodian banks, brokers, dealers, or nominee holders who hold on behalf of others at various levels leading to the ultimate beneficial holder.  The Trustee is informed that Deerfield Partners, L.P. ("Deerfield") is the beneficial owner of approximately 78% of the outstanding principal amount of the Secured Notes.  (DE 1029 ¶ 101).

The remaining 22% of the Secured Notes—amounting to over $60 million of outstanding principal—are held beneficially by other parties, the identity of whom is unknown to the Trustee.  The Secured Notes are publicly tradable.  This means that the beneficial holders of the Secured Notes may change from time to time without the knowledge of the Trustee or the Bankruptcy Debtor, as issuer.

On February 13, 2024 (the "Petition Date"), the Bankruptcy Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On March 1, 2024, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee" or the

"Appellant") pursuant to Bankruptcy Code section 1102(a)(1) in the chapter 11 cases of the Bankruptcy Debtors (the "Bankruptcy Cases").  On May 21, 2024, the Committee, understanding that it had no direct causes of action, filed a motion seeking standing (the "Standing Motion") to step into the shoes of the Bankruptcy Debtors to try to attack the validity of the Secured Notes. (DE 792).  The Bankruptcy Debtors, in their reasoned judgment and in dealing with the give and take of the bankruptcy process, had rightfully concluded that pursuing such causes of action would be costly, not likely to result in recovery to the estates, and not in the Bankruptcy Debtors' best interests.  (DE 713 ¶ 9–10, 167–73).  The United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), in considering and ultimately denying the Standing Motion, held numerous hearings and heard extensive evidence on these issues.  (HT 7, 9).  Fully informed, the Bankruptcy Court recognized the substantial "hurdles" to the Committee succeeding in such litigation and acknowledged the rational decision the Bankruptcy Debtors had made in not pursuing futile litigation to the detriment of all parties, including unsecured creditors of the Bankruptcy Debtors.  (HT 9 at 6-9).

During the Bankruptcy Cases, the Appellant also attacked the negotiated releases provided for in the Bankruptcy Debtors' plan (the "Plan") to attempt to preserve its ability to attack and unwind distributions that were made under the Plan. The Bankruptcy Court rightfully recognized, *inter alia*, that the release provisions

4

were integral to the Plan and had been relied upon by creditors in negotiating the Plan and ultimately voting in favor of the Plan.  On August 2, 2024, the Bankruptcy Court, over the objections of the Committee, entered an order (the "Confirmation Order") confirming the Plan.  (DE 913).  The Committee did not seek a stay of the Plan effective date, which occurred on August 7, 2024 (the "Effective Date").  (DE 932).  Distributions have been made under the Plan.

On August 16, 2024, the Committee noticed appeals of both the Confirmation Order and the Standing Motion Order (as defined below).[3]  The Trustee is named as a party in this Appeal.

For the reasons set forth below and in the Responding Briefs, the Appeal should be dismissed as equitably moot because the Plan has been substantially consummated, the relief sought in the Appeal would fatally scramble the Plan and significant harm would result to third parties who have justifiably relied on the confirmation of the Plan.  Moreover, and also for the reasons set forth below and in the Responding Briefs, to the extent that the Appeal is not dismissed as equitably moot, the Bankruptcy Court did not err in entering the Standing Order and the Confirmation Order, which were appropriate and correct under the facts of this case, applicable law and governing precedent.

---

[3]   The Committee's appeals were consolidated for joint administration under Civil Case No. 3:24-cv-08550 on October 1, 2024.

## STANDARD OF REVIEW

As set forth in the Responding Briefs, the Bankruptcy Court's denial of derivative standing and its grant of releases under the Plan are each an exercise of equitable powers, and therefore, such decisions should be reviewed for abuse of discretion. *See Cybergenics Corp.* v. *Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (noting that a decision granting or denying "derivative standing upon creditors' committees is a straightforward application of bankruptcy courts' equitable powers."); *In re Hudson's Coffee, Inc.*, No. CIV.A.08CV5133DMC, 2009 WL 1795833, at *2 (D.N.J. June 22, 2009*)*; *see also*, *In re George Washington Bridge Bus Station Dev. Venture LLC*, 2021 U.S. Dist. LEXIS 28601, at *7 (S.D.N.Y. 2021) (reviewing a "bankruptcy court's ruling on derivative standing" for "abuse of discretion" because it represents an application of its equitable powers); *In re Racing Servs., Inc.*, 540 F.3d 892, 901 (8th Cir. 2008) (same).

Because the Bankruptcy Court's decisions were each an exercise of its sound discretion, this Court should leave those decisions undisturbed "unless there is a definite and firm conviction that the court ... committed a clear error of judgment in the conclusion it reached upon a weighing the relevant factors[,]" specifically, "a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *In re Boy Scouts of Am. & Delaware BSA, LLC*, 650

B.R. 87 (D. Del. 2023) (quoting *in re Nutraquest*, *Inc.* 434 F.3d 639, 645) (3d Cir. 2006); *Hudson's Coffee*, 2009 WL 1795833, at *2 (same).

Moreover, even if the standard of review on appeal were *de novo* as the Committee asserts, the Bankruptcy Court's decisions should be affirmed. Under any standard, it is appropriate for this Court in performing such a review to give due consideration to the Bankruptcy Court, which had the benefit of overseeing the entire bankruptcy process from start to finish and had an intimate familiarity with the dynamics between the various constituencies before it, and to the bankruptcy process itself.

## ARGUMENT POINT 1: THE APPEAL IS EQUITABLY MOOT

### I.      Finality of Bankruptcy Plans and Equitable Mootness Standard

The Appeal should be dismissed on the ground that it is equitably moot. Courts have long recognized the uniqueness and sanctity of the bankruptcy plan confirmation process and the many intricate dynamics that lead to a confirmed plan. Indeed, the formulation, solicitation, and confirmation of a bankruptcy plan involves extensive back and forth negotiations between various constituencies involved in a bankruptcy case, as well as a vote by creditors in reliance on the terms of the confirmed plan. It also often, in cases like the one here, requires the support, cooperation, and even concession of certain rights of the secured creditors.

By way of just a few examples of the dynamics at play in this case, during the Bankruptcy Cases, the Noteholders allowed the use of their cash collateral by the Bankruptcy Debtors to permit the Bankruptcy Debtors to fund the chapter 11 process. A cash collateral order was negotiated by the parties, and the Bankruptcy Court, after notice and hearing, entered an order approving the use of cash collateral on negotiated terms (the "Final Cash Collateral Order"). (DE 188). Among other things, the Final Cash Collateral Order granted the Collateral Agent Adequate Protection Liens in all Collateral (as such terms are defined in the Final Cash Collateral Order) and all of the Debtors' now-owned or thereafter-acquired real and personal property, assets and rights of any kind or nature, including any previously unencumbered assets, subject only to certain carve-out and permitted prior liens. (DE ¶ 4(a)). Without the Noteholders' cooperation and consent to the use of cash collateral, a quick, forced, and disorganized sale process in or out of bankruptcy would likely have occurred, and unsecured creditors of the Bankruptcy Debtors would likely have received no recovery. Moreover, the Bankruptcy Debtors would not have been able to get to a confirmed plan.

In addition, in the absence of a bankruptcy proceeding, the Noteholders or the Trustee could have foreclosed on their collateral. Accordingly, without the Noteholders' agreement and concessions, unsecured creditors would not have received the recovery that they did in the Plan, a significant recovery that was agreed

8

to by the Noteholders and voted on by the requisite amount and number of creditor constituencies prior to confirmation of the Plan.

The many steps in the bankruptcy process and the various negotiations and orders entered by the Bankruptcy Court are interrelated. The Bankruptcy Code attaches a finality to bankruptcy plans for a reason. *See* 11 U.S.C §§ 1127, 1141 and 1144. Section 1144 allows for revocation of a Plan only for fraud and only for 180 days post-confirmation. 11 U.S.C §§ 1144. Similarly, Section 1127 provides for modification of a confirmed plan only in very limited circumstances. 11 U.S.C. § 1144.

The finality considerations at play in cases involving plan revocation and modification are equally applicable in considering equitable mootness. While Appellant states that it is not looking to unwind the Plan through the Appeal and that the relief sought would not impact plan confirmation except in discrete ways relating to the granting of releases, this is at odds with the relief requested. Yet, even if it were not, the relief sought by Appellant would at a minimum constitute a modification of the Plan and an impermissible plan modification under 11 U.S.C. 1127.

A change that "materially and adversely changes the way that a claim or interest holder is treated" constitutes a modification of the plan. *In re Celsius Network LLC*, 656 B.R. 327, 348 (Bankr. S.D.N.Y. 2023). Appellant is looking to

step into the shoes of the Debtors and strip the liens attaching to the Secured Notes, clearly a material and adverse change to treatment of the Secured Notes under the Plan and thus a plan modification.

It is well settled that after an order confirming a reorganization plan has been entered, the interest in finality becomes paramount. *In re Szostek*, 886 F.2d 1405, 1409 (3d Cir. 1989); *Freedom Mortg. Corp. v. Smith*, No. 21CV11025 (EP), 2022 WL 17093102, at *5 (D.N.J. Nov. 21, 2022), *aff'd sub nom. In re Smith*, 102 F.4th 643 (3d Cir. 2024). Finality interests "are particularly important in the bankruptcy context, where numerous contending claims and interests are gathered, jostled, and are determined and released." *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 91 (2d Cir. 1997); *Ostreicher v. Lincoln Nat'l Life Ins. Co.*, No. 17CV6904NGGJO, 2019 WL 7194478, at *6 (E.D.N.Y. Dec. 26, 2019). Indeed, as the court in *In re Penn Cent. Transp. Co.* noted:

> [T]he purpose of the bankruptcy law and the provisions for reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax the provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

10

771 F.2d 762, 767 (3d Cir. 1985) (citing *Duryee v. Erie R. Co*., 175 F.2d 58, 63

(6th Cir. 1949)*.* Many years ago, the court in *In re Charterhouse, Inc.* provided a

helpful explanation of this finality cannon, which still holds true today:

> The statutory termination of the right to seek modification of a Chapter 11 plan is intended to promote finality in the reorganization process. *In re Penn Central Transportation Co.*, 42 B.R. 657, 666-67 (E.D. Pa. 1984). A debtor's creditors and interest-holders commit themselves to the governance of a particular mode of reorganization by acquiescing to confirmation of a plan, and by relying upon the terms and character of that plan in accepting it. Their rights under the plan then vest upon substantial consummation. *In re AT of Maine, Inc.*, 56 B.R. 55,57 (Bankr. D. Me. 1985). The generalized public interest in finality in court determinations, and the Bankruptcy Court's specific interest in the integrity of its remedies, would both be prejudiced by allowing modification of a confirmed Chapter 11 plan when the parties' rights have been settled in such a fashion.

*In re Charterhouse, Inc.*, 84 B.R. 147, 152 (Bankr. D. Minn. 1988); *see also In re*

*Archway Homes, Inc.*, No. 12-02226-8-SWH, 2013 WL 5835714, at *2 (Bankr.

E.D.N.C. Oct. 30, 2013) (internal quotation marks omitted) ("Congress

drafted § 1127(b) to safeguard the finality of plan confirmation."); *In re Antiquities*

*of Nev., Inc.*, 173 B.R. 926, 928 (9th Cir. BAP 1994) (citing *In re U.S. Repeating*

*Arms Co.*, 98 B.R. 138, 140 (Bankr. D. Conn. 1989)) (requirements of § 1127 were

11

"established to promote finality and protect a creditor's reliance upon the terms of a plan in accepting it").

For these reasons, under section 1127 of the Bankruptcy Code, post-confirmation modification of a chapter 11 plan may only be made "before substantial consummation of such plan". 11 U.S.C. § 1127(b); *In re SemCrude L.P.*, 728 F.3d 314, 321 (3d Cir. 2013); *Charterhouse*, 84 B.R. at 151. Appeals seeking to undo a substantially consummated plan are equitably moot and beyond the point where a court can "order fundamental changes." *Manges v. Seattle-First Nat'l Bank*, 29 F.3d 1034, 1039 (5th Cir. 1994). The Third Circuit first recognized the doctrine of equitable mootness in *In re Continental Airlines*, where it established a factors test for evaluating equitable mootness. 91 F.3d 553, 560 (3d Cir. 1996). Since then, the Third Circuit has refined its equitable mootness analysis into two analytical steps:

      a. Whether a confirmed plan has been substantially consummated; and

      b. If so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation.

*See SemCrude L.P.*, 728 F.3d at 321; *In re Tribune Media Co.*, 799 F.3d 272, 277 (3d. Cir. 2015). Accordingly, if it is established that substantial consummation has occurred, the next step for a court considering equitable mootness is to "look to whether granting relief will require undoing the plan as opposed to modifying it in a manner that does not cause its collapse." *Id.*; *see also In re Dura Automotive Sys.*

12

*Inc.*, 403 B.R. 300, 307 (D. Del. 2009) (finding equitable mootness where remedies sought on appeal would supplant the confirmed plan "and impose [ ] in its stead a new plan").

## II.    The Plan Has Been Substantially Consummated

Under 11 U.S.C. § 1101(2), "substantial consummation" of a chapter 11 plan occurs when: (i) substantially all of the property to be transferred under the plan has been transferred; (ii) the debtor or its successor has assumed the business or management of substantially all of the property dealt with by the plan; and (iii) distributions under the plan have commenced.

Here, Appellant acknowledges that the Plan has been substantially consummated. (*See* Opening Brief p. 13). The Committee could have sought a stay of the Effective Date and sought to stay the consummation of the Plan. It did not. As a result, the Effective Date has occurred and distributions have been made to creditors, both secured and unsecured, in a complex manner under the structures of the confirmed Plan. This included payment of tens of millions of dollars to convenience class unsecured claimants and administrative expenses, including the payment of Committee counsel itself, and other secured and unsecured creditors of the Debtors. (*See generally* DE 909, Article IV.)

13

### III.   Appellant Seeks to Unwind the Substantially Consummated Plan

Despite the Appellant's unsupported statement that it does not seek to unwind the distributions already made under the consummated Plan, the Appellant is seeking relief that would do just that.  Appellant states that "[b]y this appeal, the Official Committee does not seek to unwind the distributions already made under the consummated Plan or to vacate the Confirmation Order."  (Opening Brief p. 13). Yet at the same time Appellant states that it should be granted standing because "the Debtors could and should unwind [the March 2023 transaction] in order to pay all of their creditors equally."  (Opening Brief p. 5).  The relief the Appellant seeks would in fact result in undoing the substantially consummated Plan, pursuant to which hundreds of millions of dollars have already been distributed to an unknown number of beneficial Noteholders.  Granting such relief would fatally scramble the Plan and significantly harm third parties who have justifiably relied on the Bankruptcy Court's plan confirmation.  *See In re Exide Holdings, Inc.*, No. 20-11157-CSS, 2021 WL 3145612, at *6 (D. Del. July 26, 2021).

As further evidence of its intent to disrupt the Plan, the Appellant is requesting standing to sue Deerfield, the majority Noteholder, and the Trustee, among others, to undo the heavily negotiated treatment afforded to the Noteholders in the Plan and seems to seek a nullification of the security interest held by the Trustee on behalf of the Noteholders.  (*See generally* DX80).  Indeed, the Appellant is asking this court

14

to disregard the extensive negotiations that occurred throughout the bankruptcy proceedings on which the Noteholders, the Trustee, and many other creditors relied, including, but not limited to, the negotiations in the context of the Final Cash Collateral Order and Plan provisions.[4]

To the extent that the Appellant would purport to seek, by way of the Appellant's Proposed Complaint, to recover amounts that have been distributed to the Noteholders pursuant to the Plan, this would be a *de facto* unwinding of the confirmed Plan, which treated these claims as secured.

Further, because the Committee seeks to include the Trustee as a defendant in its Proposed Complaint, if the Appellant were to succeed on its Appeal, the Trustee may be stuck in protracted litigation relating to the Secured Notes and the Indenture,

---

[4]  The Appellant's desire to undo the plan terms is clear in reviewing the proposed complaint (the "Proposed Complaint") that is the subject of its Standing Motion which the Bankruptcy Court denied via the *Order Denying the Official Committee of Unsecured Creditors' Motion for (I) Leave, Standing, and Authority to Commence and Prosecute Certain Claims and Causes of Action on Behalf of the Debtors' Estates and (II) Exclusive Settlement Authority* (the "Standing Motion Order"). (*See* DX80). Specifically, the Proposed Complaint requests from the Bankruptcy Court, among other things, entry of an order (i) "[a]voiding, as fraudulent conveyances" the "March Exchange" and the "August Exchange" (each as defined in the Proposed Complaint), whereby the Noteholders exchanged unsecured notes for the Secured Notes; (ii) [o]rdering, that "the liens securing the [] Secured Notes are invalidated and avoided, and other such relief as appropriate in connection with the unwinding of the March Exchange"; (iii) "[o]rdering, that . . . [the Committee] may recover the value of the property conveyed in connection with the August Exchange"; (iv) "[a]voiding, as fraudulent conveyances . . . all of the guarantees and collateral pledges in favor of the [Collateral] Agent made by each of the [Bankruptcy] Debtors, and recovering and preserving such guarantees and pledges in their entirety"; and (v) "[o]rdering recission of the March Exchange." (*Id.* p. 71–2). Such relief cannot be ordered without fatally scrambling the substantially consummated Plan.

which were canceled pursuant to the Bankruptcy Debtors' confirmed Plan.[5]  Indeed, the Bankruptcy Debtors' obligations to indemnify the Trustee expressly remain intact post-confirmation pursuant to the Indenture, the Plan, and the Confirmation Order.  (*See* Indenture §§ 3.01,7.06 ("The Company [] covenants to indemnify the Trustee in any capacity under this Indenture . . . The obligations of the Company under this Section 7.06 to compensate or indemnify the Trustee and to pay or reimburse the Trustee for expenses, disbursements and advances shall be secured by a senior claim."); DE 909, Article IV(H) ("provisions of the [] Indenture and the other 2028 Senior Secured Notes Documents and the Convertible Notes Documents that survive the termination of the respective Indenture pursuant to its terms, including indemnification and charging lien rights of the Trustees, shall continue in full force and effect"); DE 913 ¶ 78 ("provisions of the [] Indenture . . . including indemnification and charging lien rights of the Trustees, shall continue in full force and effect")).  Contrary to the Appellant's suggestion in footnote 17 of its Opening Brief, this is not a prepetition contractual obligation that did not survive Plan confirmation, and the Trustee's indemnity right is not limited in scope.  (*See* DE 909, Article IV(H); DE 913 ¶ 78).  Yet, if the Appellant is successful and the Standing Order is overturned and the releases nullified, the Trustee's

---

[5]   Certain elements of the Indenture by their terms expressly survive such cancelation, including the Trustee's indemnification rights.  (*See* Indenture §§ 3.01,7.06).

indemnification rights against the Bankruptcy Debtor, as issuer, for losses incurred in having to defend any subsequent litigation may be severely prejudiced, since the Plan has been consummated and the Debtors' assets will have been liquidated and distributed.

The Trustee and Noteholders would have objected to a Plan that allowed for a collateral attack on their rights by a party attempting to step into the shoes of the Debtor and seeking to do what the Debtor could not do, and the Noteholders certainly would not have been expected to vote in favor of a Plan that allowed for such a result. Granting the relief the Appellant seeks would significantly harm third parties who have justifiably relied on the substantially consummated Plan. Having chosen to forgo a stay, and after allowing distribution to be made under the Plan, Appellant cannot now unring the bell.

For these reasons and others, the relief sought in this Appeal would have a domino effect, ultimately impacting the integrity of the confirmed Plan in myriad ways. Thus, despite its empty assertions to the contrary, the Appellant is directly attacking the Bankruptcy Debtors' confirmed Plan. The doctrine of finality and equitable mootness exist to prevent this very action.

17

## IV.    22% of the Noteholders are Unknown and Would Be Substantially Harmed if the Plan Were Unwound

Moreover, this is not a two-party dispute between Deerfield and the Committee.  Indeed, there are potentially many Noteholders that would be directly affected by the relief the Committee seeks.  And while neither the exact number of Noteholders nor the identities of the beneficial holders of the Secured Notes (other than Deerfield) is known, it is known that there is at least $60 million of outstanding principal of Secured Notes held by parties that have not been identified or named in the Complaint.[6]

As noted above, the sole record holder of the Secured Notes is DTC, a clearinghouse, and the Secured Notes are publicly traded.  On the Effective Date of the confirmed Plan, distributions were made through the Trustee to DTC as sole record owner of the Secured Notes.  From there, DTC would have made distributions to the next level of ownership until the funds ultimately reached the beneficial holders of the Secured Notes who held Secured Notes at that time.  Importantly, the Trustee has no information as to whether any of the 22% of the Secured Notes held by parties other than Deerfield were ever traded or if the Noteholders of the 22% on the Effective Date were the same Noteholders who received the Secured Notes at

---

[6]    This presumably is why the Trustee is named as a defendant in the Proposed Complaint, as there has been no allegation or suggestion of misconduct or liability on the part of the Trustee, nor could there be.  It is certainly clear that no colorable claims have been or could be directed at the Trustee itself.

the time of issuance in 2023. Indeed, it is possible that many current Noteholders acquired their Secured Notes after the issuance in reliance on their secured status. Given the nature of the secured debt and book-entry manner in which the Secured Notes are held, the Appellant may not even be able to identify beneficial holders of the Secured Notes who received distributions under the consummated Plan. This inability to "unscramble the egg" goes to the heart of equitable mootness and is demonstrative of the reason the doctrine exists. *See Exide*, WL 3145612, at *5 (finding substantial consummation when "distributions have begun").

In sum, the Appellant refers to Deerfield as the "primary Noteholder" and glosses over the fact that 22% of the Secured Notes are held by entities that are not parties to this Appeal and who would clearly be prejudiced by the Committee's attack on the Secured Notes. The Appellant's sweeping effort to nullify the secured nature of the Secured Notes and the releases provided for in the Plan, which were relied upon by creditors in voting to accept the Plan, treats all Noteholders the same and significantly harms not only Deerfield but also unidentified third parties who have justifiably relied on confirmation of the Plan. Accordingly, the substantially consummated Plan—pursuant to which hundreds of millions of dollars has been distributed to any number of beneficial Noteholders who would be significantly harmed by the Plan they justifiably relied on—should not be unwound, and the Appeal should be dismissed as equitably moot.

19

**ARGUMENT POINT 2: EVEN IF THIS COURT DOES NOT FIND THAT THE APPEAL IS EQUITABLY MOOT, THIS COURT SHOULD NOT REVERSE THE STANDING MOTION OR OVERTURN THE BANKRUPTCY COURT'S RULING WITH RESPECT TO RELEASES**

The Committee seeks to overturn the Bankruptcy Court's rulings with respect to the Standing Motion Order and the releases in the Plan so that it can prosecute meritless claims that the Debtor determined are not sustainable, would severely deplete estate resources, and are not warranted or justified.  The Bankruptcy Court did not err in finding that Appellant failed to meet its burden to justify derivative standing under the circumstances of this case.

I.      **Appellant Has Not Met Its Burden to Warrant Derivative Standing**

"[T]o be granted derivative standing, the moving party must demonstrate that (i) the debtor-in-possession has unjustifiably refused to pursue the claim or refused to consent to the moving party's pursuit of the claim on behalf of the debtor-in-possession; (ii) the moving party has alleged colorable claims; and (iii) the moving party has received leave to sue from the bankruptcy court." *In re Optim Energy, LLC*, No. 14-10262-BLS, 2014 WL 1924908, at *6 (Bankr. D. Del. May 13, 2014) (citing *Cybergenics*, 330 F.3d at 548); *see also In re Racing Servs., Inc.*, 540 F.3d 892, 900 (8th Cir. 2008); *In re Yes! Entm't Corp.*, 316 B.R. 141, 145 (D. Del. 2004). In "deciding whether there is a colorable claim, the court should undertake the same analysis it takes when a defendant moves to dismiss a complaint for failure to state

a claim."  *In re Centaur, LLC*, No. 10-10799 (KJC), 2010 WL 4624910, at *4 (Bankr. D. Del. Nov. 5, 2010); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"); *see also Philips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  Appellant does not meet this standard.

For all of the reasons detailed in the Responding Briefs, which the Trustee joins in and incorporates as if set forth herein, the Committee (i) has utterly failed to satisfy its burden of showing that the Bankruptcy Debtors unjustifiably refused to pursue a purported claim, (ii) does not have colorable claims to prosecute, and (iii) has not received leave to sue from the Bankruptcy Court.  Appellant's failure to establish these prerequisites precludes this Court from granting derivative standing. *In re Racing Servs., Inc.*, 540 F.3d at 900 ("[T]o prevent derivative adversary proceedings from becoming the norm in bankruptcy, we agree with our sister circuits that the critical inquiry is whether the trustee (or debtor-in-possession) abused its discretion by unjustifiably refusing to pursue the creditor's proposed claims."). Moreover, the Appellant's recycled arguments on appeal in connection with the Debtor releases are likewise insufficient to merit reversal of the substantially consummated Plan as explained in the Responding Briefs.

21

## II.    No Colorable Claims Have Been Asserted Against the Trustee

Lastly, but very importantly, the Trustee notes that it is uniquely situated in this case. The Trustee does not believe that the Appellant has met its burden to be granted derivative standing as to *any* of the proposed defendants to its Proposed Complaint, but the Appellant has particularly failed to meet its burden with respect to the Trustee. In fact, *no* allegations, let alone colorable claims, of wrongdoing have been asserted against the Trustee, nor could they be.

Appellant's arguments as to standing are not appropriately directed to the Trustee.[7]

In addition, as set forth above, the Trustee notes that it is fully indemnified by the Debtors. Forcing the Trustee to defend claims asserted against it after confirmation of the Plan and after the Debtors have distributed their assets would place the Trustee in an unfair position and be prejudicial to the Trustee and the rights and protections it holds under the Indenture. The Trustee reserves all of its rights with respect to such issues.

Standing must therefore be denied with respect to any proposed claims by Appellant that might be directed against the Trustee.

---

[7]    To the extent that derivative standing is granted, the Trustee reserves all rights to argue that it is not a proper party in any subsequent litigation initiated by the Appellant.

22

## III.    The Bankruptcy Court Also Did Not Err in Confirming the Plan Releases

The Trustee joins in and adopts the arguments made by the Debtor and Deerfield as to the appropriateness of the releases in the Plan.

[*Remainder of page left intentionally blank*]

## CONCLUSION

For all the reasons set forth herein and in the Responding Briefs, the Trustee respectfully submits that this Court should affirm the Bankruptcy Court's Standing Motion and Confirmation Orders.

November 15, 2024
Morristown, New Jersey

**RIKER DANZIG LLP**

By:  */s/ Joseph L.Schwartz*
Joseph L. Schwartz, Esq.
Tara J. Schellhorn, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey  07962-1981
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
jschwartz@riker.com
tschellhorn@riker.com

**SHIPMAN & GOODWIN LLP**
Kathleen M. LaManna, Esq.*
Kimberly S. Cohen, Esq.*
Anthony R. Scarcella, Esq.*
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (860) 251-5603
Facsimile: (860) 251-5218
klamanna@goodwin.com
kcohen@goodwin.com
ascarcella@goodwin.com

*Co-Counsel to U.S. Bank Trust Company, National Association as Trustee and Collateral Agent for the 4.5% Series A and Series B Convertible Senior Secured Notes due 2028*

*\*Pro Hac Vice* Pending

24

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h), I, Joseph L. Schwartz, Esq., hereby certify that:

1.     The foregoing Response and Joinder complies with the word limit of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) because this document contains 5,555 words.

2.     This document complies with the typeface requirements of Federal Rules of Bankruptcy Procedure 8015(a)(5) and 8015(a)(6) because it has been prepared in a proportionally spaced typeface in a 14-point Times New Roman font.

*/s/ Joseph L. Schwartz*
Joseph L. Schwartz, Esq.

25